## WESTERN MEAT CO. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Ninth Circuit. September 2, 1924.)

No. 4064.

1. **Monopolies ⬦20—Stock acquisition held violation of Clayton Act.**

Acquisition and continued control and ownership of capital stock of one packing company by another packing company, resulting in elimination of competition, *held* in violation of Clayton Act, § 7 (Comp. St. § 8835g).

2. **Monopolies ⬦20—Clayton Act construed.**

The Clayton Act, § 7 (Comp. St. § 8835g), prohibits the acquisition by one corporation of other company's stock where effect may be to substantially lessen competition between the two, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce.

3. **Monopolies ⬦20—Acquisition of competitor's stock held violation of Federal Trade Commission Act.**

Acquisition by packing company of stock of other packing company, resulting in suppressing competition, *held* a violation of Federal Trade Commission Act, § 5 (Comp. St. § 8836e).

4. **Monopolies ⬦24(2)—Evidence held to sustain findings that acquisition of other company's stock substantially lessened competition.**

Evidence *held* to sustain findings of Federal Trade Commission that effect of one packing company's acquisition of stock of other packing company was to substantially lessen competition in violation of Clayton Act, § 7 (Comp. St. § 8835g).

Petition to Review Order of Federal Trade Commission.

Petition by the Western Meat Company, a corporation, against the Federal Trade Commission, to review an order of the Commission. Petition denied.

The present respondent having issued and served its complaint against the present petitioner, wherein it was alleged that it had reason to believe that the meat company had been and then was using unfair methods of competition in interstate commerce, in violation of section 5 of the act of Congress approved September 26, 1914. entitled "An act to create a Federal Trade Commission,

to define its powers and duties, and for other purposes" (38 St. 717 [Comp. St. § 8836e]), and section 7 of the act of Congress approved October 15, 1914, commonly known as the Clayton Act, entitled "an act to supplement existing laws against unlawful restraints and monopolies, and for other purposes" (38 St. 730 [Comp. St. § 8335g]), and setting forth the particulars of such alleged violations, and the meat company having duly entered its appearance by answer admitting certain of the allegations of the complaint and denying others, and hearings in those proceedings having taken place before an examiner of the Commission, both sides having introduced evidence in support of their respective claims, and the matter having, after argument by the attorneys of the respective parties, been duly submitted to the Commission for consideration and decision, the latter, on the 2d day of February, 1923, made and entered the following findings of fact and conclusions:

"Findings as to the Facts.

"Paragraph 1. Respondent, Western Meat Company, is a corporation, organized, existing, and doing business under and by virtue of the laws of the state of California, with its principal office and place of business in the city and county of San Francisco, in said state, now, and at all times herein mentioned, engaged in the business of purchasing live cattle, calves, hogs, sheep and lambs, in various states and territories of the United States, and transporting same and causing same to be transported from such states to respondent's packing plant situated in the state of California, and after the slaughtering of said cattle, calves, hogs, sheep and lambs in said plant, has shipped the meat and meat products resulting therefrom from such packing plant to and through various distributing branches situated in the state of California and other states of the United States to the purchasers of said products in such various states and territories of the United States, including the states of California and Nevada. On December 30, 1916, the outstanding capital stock of said Western Meat Company consisted of 12,500 shares of common stock of the par value of $100 each, and the said concern at that time had assets of approximately $5,000,000 in value.

"Par. 2. The Nevada Packing Company is a corporation organized, existing and doing business under and by virtue of the laws of the state of Nevada, with its principal office and place of business in the city of Reno, in said state, now, and at all times herein mentioned, engaged in the business of purchasing live cattle, calves, hogs, sheep and lambs, in various states and territories of the United States and in transporting same and causing same to be transported from such states to its packing plant situated in the state of Nevada, and after the slaughtering of said cattle, calves, hogs, sheep and lambs in said plant, has shipped the meat and meat products resulting therefrom from such packing plant to the purchasers of said products in various states and territories of the United States, including the states of Nevada and California.

"Par. 3. On December 30, 1916, respondent, Western Meat Company, acquired all of the issued and outstanding capital stock of the Nevada Packing Company, which consisted of 3,530 shares of common stock of the par value of $100 each. At the time of said acquisition Louis F. Swift, president of Swift & Co., meat packers, and other stockholders of Swift & Co., owned approximately 45 per cent. of the stock of the Western Meat Company, and officers of Armour & Co., Morris & Co., Cudahy Packing Company owned in the aggregate of 30 per cent. of said stock. Louis F. Swift was instrumental in causing said acquisition of said stock to be made by respondent, and said acquisition was made only after assurance of no objection on the part of Armour & Co.

"Par. 4. In January, 1914, Louis F. Smith was president and director of the Western Meat Company, and he resigned during that month at the annual meeting of the stockholders, and F. L. Washburn was made president and director of the company. The following letter from Louis F. Swift to E. B. Shugert, treasurer of the Western Meat Company, dated January 6, 1914, is indicative of the Swift control of the Western Meat Company: 'Please have it understood with Mr. Washburn that it may be that we will want to change back again later on to the present officers, and I do not want him to feel hurt if such should prove to be the case. In the meantime want him to understand that there is to be no change in the manner of conducting the business from the present, viz., it will be directed from Chicago, as heretofore.' The said letter of instructions was received and accepted by the interested parties. Shortly after the stock of the Nevada Packing Company was purchased by the Western Meat Company with the approval of Louis F. Swift, president of Swift & Co., a letter was sent to F. L. Washburn, president of the respondent, by Louis F. Swift, under date of January 31, 1917, as follows: 'I

would suggest that you arrange that matters between the Nevada Packing Company, Reno, and Chicago, be handled similarly to those between the Western Meat Company and Chicago, viz.: On all matters of policy, etc., communications should be addressed to Louis F. Swift, Chicago; On sales and trading between the companies, satisfactory to address the departments interested? Will you please arrange? Kindly acknowledge receipt.' The instructions of said Swift as set forth in the foregoing letter were carried out and from that date the business policy of respondent was controlled by said Swift, president of Swift & Co.

"Par. 5. At the date of the acquisition of the capital stock of the Nevada Company by the Western Meat Company, competition existed between said Nevada Packing Company and the Western Meat Company, particularly in the states of Nevada and California in the purchase of live stock and in the sale and shipment of meat products; buyers of live stock for the Nevada Packing Company and the Western Meat Company endeavored to purchase live stock from the same producers in the states of Nevada and California, and other states; and salesmen of both the Nevada Packing Company and the Western Meat Company solicited orders for meat and meat products from the same trade in the states of Nevada and California, and other states in competition with each other.

"Par. 6. From December 30, 1916, to the date of taking of testimony in this case in June, 1920, respondent, Western Meat Company, has operated the packing plant of the Nevada Packing Company, and, connected with the business of such operation, has continuously purchased and shipped to said plant from various points in the states of Nevada and California and adjacent states live cattle, calves, hogs, sheep and lambs, and after slaughtering same, sold and shipped the meat and meat products resulting therefrom to various purchasers in the states of Nevada and California, and elsewhere, and still continues so to do, and as a part of its said business respondent serves substantially all of the trade that was served by the Nevada Packing Company while it was in business in competition with respondent as hereinbefore set out.

"Par. 7. The effect of the acquisition by respondent of the capital stock of the Nevada Packing Company, and the control and operation of the Nevada Packing Company's plant and business by respondent which followed said acquisition and still exists, was

1 F. (2d)—7

and is an entire elimination and suppression of the competition which had theretofore existed between respondent, Western Meat Company, and said Nevada Packing Company in the buying of live stock and in the sale of meats and meat products resulting from the slaughtering thereof, throughout the states of Nevada and California, and was and is to restrain commerce in the purchase and sale of meat and meat products commonly known as the meat packing industry in the states of Nevada and California.

"Conclusion.

"The acquisition and continued control and ownership of the capital stock of the said Nevada Packing Company, a corporation, by respondent, and the total suppression of competition between the said Nevada Packing Company and the respondent resulting from such control and operation by respondent under the conditions and circumstances set forth in the foregoing findings as to the facts, were and are unfair methods of competition within the meaning of section 5 of an act of Congress approved September 26, 1914, entitled 'An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes,' and were and are in violation of the provisions of section 7 of an act of Congress approved October 15, 1914, entitled 'an act to supplement existing laws against unlawful restraints and monopolies, and for other purposes.' "

Subsequently the meat company filed the present petition to this court to review and set aside that order.

Sullivan & Sullivan, Theo. J. Roche, and Edward I. Barry, all of San Francisco, Cal., and Frank L. Horton, of Chicago, Ill., for petitioner.

W. H. Fuller, Chief Counsel Federal Trade Commission, and James M. Brinson, Attorney Federal Trade Commission, both of Washington, D. C., for respondent.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The findings of the Commission are clear-cut and, if sustained by the evidence, establish without doubt, in our opinion, that the acquisition and continued control and ownership of the capital stock of the Nevada Packing Company by the petitioner constituted a very clear violation of section 7 of the Act of October 15, 1914, generally known as the Clayton Act, even if it could be properly held that the acts of the petitioner did not violate that of September

26, 1914, generally known as the Federal Trade Commission Act, for the Clayton Act was enacted by Congress for the purpose, among other purposes, as expressly declared in its title, to supplement the then existing laws against unlawful restraints and monopolies; section 7 being, so far as pertinent, as follows: "Sec. 7. That no corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital of another corporation engaged also in commerce, where the effect of such acquisition may be to substantially lessen competition between the corporation whose stock is so acquired and the corporation making the acquisition, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce. * * * "

[2, 3] That language is too plain, we think, to admit of any sort of doubt that three things are thereby expressly condemned and prohibited, namely, the acquiring by any corporation engaged in commerce, directly or indirectly, the whole or any part of the stock or other share capital of another corporation engaged also in commerce, where the effect of such acquisition may be to substantially lessen competition between the corporation whose stock was acquired and the corporation making the acquisition, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce.

If the evidence sufficiently sustained the findings of fact made by the Commission, we are also of the opinion that the conclusion of the Commission, that the acts committed by the petitioner also constituted a violation of section 5 of the Federal Trade Commission Act, was also proper. See Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; United States v. American Tobacco Co., 221 U. S. 179, 31 Sup. Ct. 632, 55 L. Ed. 663, and the numerous cases there cited.

[4] It remains to consider the petitioner's contention that the evidence was insufficient to justify or to sustain the findings of fact made by the respondent Commission. Regarding that matter, the case, in our opinion, is equally clear.

It is contended on the part of the petitioner that the packing company (which was a corporation of Nevada, all of the stock of which, except 1,000 shares, was owned by one U. M. Slater, who had control of its property) operated a small meat packing plant at Reno in that state, in connection with which it purchased live stock and sold meat and meat products, conducting its operations almost entirely within the state of Nevada; that at the same time he (Slater) conducted a wholesale meat business at Oakland, Cal., under the name of U. M. Slater, Inc.; that on account of the bad condition of his health he was desirous of selling the Nevada Packing Company property, to which end he, three years before the sale in question was made, approached the petitioner's representative, Mr. Washburn, but without success; that subsequently, Slater being still willing to sell, the matter was again taken up with the petitioner and the purchase in question consummated—the petitioner contending that the acquirement of the physical assets of the company and its appurtenances being the sole inducing cause of its purchase.

We think that contention wholly inconsistent with the evidence which, in our opinion, abundantly supports the findings of fact made by the Trade Commission. It is unnecessary to review the evidence in detail, but we will briefly refer to some of it and to a few of the pertinent circumstances.

Not only does the evidence of the witnesses McCullouch, Westfall, Christensen, Moffat, Dorris, Fee, Beccas, Nichols, and Cornmayer show that there was, prior to and at the time of the purchase in question, active and substantial competition between the Nevada Packing Company and the petitioner, Western Meat Company, in the purchase of live stock particularly in the state of Nevada, but in the sale of the products of such stock, and which competition was carried on not only in the state of Nevada but in other states. And that it was substantial, the evidence shows that in the year 1916 the packing company slaughtered 10,777 cattle, 977 calves, 13,425 hogs, and 22,478 sheep, and that its gross sales for the fiscal year 1915–16 amounted to approximately $1,277,954. Indeed, it appears from one of the exhibits introduced in evidence that upon the consummation of the purchase in question the following was published in the Reno Evening Gazette:

"The Western Meat Company, which took over the plant of the Nevada Packing Company the first of the year, is now planning for greater co-operation with the ranchers and consumers of this state. To that end the company is now outlining plans calling for the outlay of a large sum of money to enlarge the plant and improve the equipment.

" 'In acquiring the Nevada Packing Company,' said F. L. Washburn, president of the

concern, 'we hope still further to increase the possibilities of the company which has become one of the big business houses of the state under the management of Mr. Slater.

" 'The line susceptible of the greatest development at present is the pork packing end of the business. Nevada ranchers are now producing hogs of good quality, but there is still room for improvement. Many light weight hogs are being shipped in which should remain on the ranch until they have weight enough to make desirable packer hogs. We require an average weight of 175 to 250 pounds and animals of this weight are easily worth a cent more per pound at all seasons of the year than the lighter stock.

" 'To increase the hog-raising industry of this state and develop it to the fullest capacity, we must have the continued support of all Nevada consumers, as the success of this industry, as well as that of our own plant, lies in the demand that we can create in the community for hams, bacon, lard and fresh meats.

" 'The Nevada Packing Company also has a steadily increasing business in nearby points in California,. and it is our aim to still further improve the quality of our products so that no products shipped in from the east will have any preference.

" 'Every consumer,' continued Mr. Washburn, 'by asking for our products can assist in developing a business that will eventually be of the greatest value to the purchasers of live stock, poultry and foodstuffs in Nevada. As soon as is possible we shall enlarge the present plant so that we may handle all the products that our ranchers in this state can produce.' "

The record shows that at the time of the purchase in question, Louis F. Swift was president of the meat packing firm of Swift & Co., and that he and other stockholders of that company owned approximately 45 per cent. of the stock of the petitioner, Western Meat Company, and that officers of Armour & Co., Morris & Co., and Cudahy Packing Company, all meat packing concerns, owned in the aggregate about 30 per cent. of the stock of the Western Meat Company, and that Louis F. Swift was instrumental in causing the purchase in question, having theretofore obtained assurance of no objection thereto on the part of Armour & Co.

Surely nothing more is needed to show that the true purpose of the purchase by the Western Meat Company of the stock of the Nevada Packing Company was the elimination of the competition of the latter company and the expansion of that business by the Western Meat Company, thereby strengthening its hold, than the letters of Mr. Swift to E. B. Shugert, treasurer of the Western Meat Company, and to F. L. Washburn, president of that company, that are set out in the findings of the Trade Commission.

That the direct result of the transaction was the complete elimination of the theretofore competition existing on the part of the Nevada Packing Company and the strengthening of the hold of the Western Meat Company on the meat packing business of Nevada and adjoining states is, in our opinion, further shown by other evidence not necessary to detail.

The petition is denied.